## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM PEDEN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| DISTRICT COUNCIL 33 | : | |
| LOCAL 696 | : | NO. 14-3045 |

## MEMORANDUM

**L. Felipe Restrepo, U.S. District Judge**                    **September 22, 2015**

On June 3, 2014, Plaintiff William J. Peden commenced this action against his labor union, Defendant District Council 33, Local 696, alleging that the union discriminated and retaliated against him in violation of the Americans with Disabilities Act ("ADA") and Title VII of the Civil Rights Act of 1964 ("Title VII"). Presently before the Court is Defendant's motion for summary judgment. For the reasons set forth below, Defendant's motion is granted.

## I.      FACTUAL BACKGROUND[1]

Peden is a member of the American Federation of State, County & Municipal Employees ("AFSCME"), Local 696, District Council 33 union (the "Union"). Joint Appendix ("JA") 39a.[2] He began working for the City of Philadelphia Revenue Department as a Customer Service Representative in May 2005 as a probationary employee. JA 1a, 45a. During Peden's first six months of probationary employment, the City reported him as absent without leave ("AWOL"). JA 1a. After Charles Perkins, Vice President of the Union, located Peden, Peden advised Perkins that he was unable to work for medical reasons. JA 1a. Perkins also learned that Peden had

---

[1]      Unless otherwise noted, the parties do not appear to dispute the facts outlined below.
[2]      Defendant submitted a "Joint Appendix" of exhibits with its Motion for Summary Judgment. Both parties cite the Joint Appendix in their briefing, and neither party has objected to the Court's consideration at this stage of anything included in the Joint Appendix. All Joint Appendix citations will refer to individual page numbers as labeled within the appendix.

tendered his resignation to the City on July 17, 2005, due to his health problems.  JA 1a, 5a.  On behalf of the Union, Perkins worked with the City and Peden to allow Peden to withdraw his resignation and take medical leave after supplying the City with appropriate documentation.  JA 2a.  Around March 2006, the City again reported Peden AWOL, and the Union assisted Peden in obtaining medical leave for a substance abuse problem.  JA 2a.  In August 2006, after Peden had a disagreement with his supervisor in the Revenue Department and the City threatened termination, the Union intervened to help Peden retain his job.  JA 2a, 34a-35a.

Several years later, in March 2009, Peden again began struggling with attendance issues due to medical problems.  JA 2a.  And again, the Union intervened and worked with the City to avoid Peden's termination and secure a six-month medical leave.  JA 2a, 48a-49a.  Peden continued to experience medical issues that spring, however, and in October 2009, he requested an extension of his medical leave.  JA 2a, 6a.  The City responded to Peden's request by advising him that he had three options: return to work, voluntarily resign, or apply for a non-service connected disability through the Board of Pensions.  JA 2a, 28a.

Based on the City's response, Peden consulted with Union representatives, including president Bobby Davis, about his options.  JA 35a, 52a.  Davis recommended that Peden resign, because Peden was unable to return to work due to his medical conditions and did not have the vested years necessary for a non-service connected disability.  JA 35a, 52a.  Peden testified that "nobody was telling [him] anything" other than to resign from his job, and the Union did not explain other alternatives to him, including a Civil Service Regulation that would allow him to return to work in a year.  JA 52a.  Peden did not resign, and the City terminated his employment.  JA 3a, 8a, 36a, 53a.

On December 9, 2009, Peden filed an appeal of the City's denial of his medical leave extension request with the Civil Service Commission.  JA 9a, 10a.  Curiously, the record contains two separate versions of the appeal form.  JA 9a, 10a.  One version contains the name of an attorney, Robert Goggin, to represent Peden, as well as Goggin's contact details; Goggin served as the attorney for the Union.  JA 9a, 36a.  Davis and Perkins both claim that they assisted Peden with filling out the appeal form on December 9, 2009, added Goggin's contact details, and gave Peden a copy of the completed form.[3]  JA 3a, 36a.  But a second version of form is missing the attorney information altogether, though the form is otherwise identical to the first version.  JA 10a.  The Union posits that Peden or someone else must have, at some point, deleted the attorney information from the form after it was filed.  JA 19a.  Peden represented in a letter to the PHRC that no attorney information was listed on the appeal form when it was filed and that somebody had entered Goggin's information after the fact.  JA 37a-38a.

An appeal hearing before the Civil Service Commission took place on April 28, 2010.  JA 3a, 11a.  Peden did not have Union representation at the hearing.  According to the Union, Peden never provided notification of his scheduled hearing date, so no Union representative appeared.  JA 17a, 36a.  According to Peden, the Union knew about the hearing but refused to appear and to represent him.  JA 37a.  At the hearing, Peden informed the Commission that he did not wish to proceed, but he did not withdraw his appeal.  JA 11a.  The Civil Service Commission then dismissed the appeal for want of prosecution.  JA 11a.  Peden subsequently filed suit against the Union in this Court.

---

[3]    Davis noted, in a letter to the Pennsylvania Human Relations Commission ("PHRC"), that he gave Peden the appeal form and that Davis filled in Robert Goggin's information on the form himself.  JA 36a.  Davis also testified to the same effect.  JA 20a.  Perkins stated in an affidavit that he filled in the attorney information on the appeal form, but also noted that he and Davis both filled out the appeal form on Peden's behalf.  JA 3a.  While the record is unclear as to exactly who may have completed the form, Peden does not appear to dispute that the Union was involved with the written appeal process.

## II.     LEGAL STANDARD

Summary judgment is proper when there is no genuine dispute of material fact and the movant is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A dispute of a material fact is considered genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  On a party's motion for summary judgment, the court must consider the "underlying facts and all reasonable inferences therefrom in the light most favorable" to the non-moving party.  *Slagle v. Cnty. of Clarion*, 435 F.3d 262, 264 (3d Cir. 2006) (citations omitted and internal quotation marks omitted).  If the movant carries its initial burden of showing the basis of its motion, the burden shifts to the non-moving party to go beyond the pleadings and point to "specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) (citation and internal quotation marks omitted).  That is, the non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue."  *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (citation and internal quotation marks omitted).   Summary judgment must be granted against a non-moving party who fails to sufficiently "establish the existence of an essential element of its case on which it bears the burden of proof at trial."  *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014).

## III.    DISCUSSION

### A.  ADA discrimination claim

The Union argues that Peden's ADA discrimination must fail because labor organizations are liable to employees only for violations of the ADA, and Peden is not an employee of the Union.  Def.'s Br. (ECF Document No. 20-1) at 12-13.  Peden appears to agree that he is not an

employee of the Union.  *See* Pl.'s Opp. Br. (Doc. 23) at 12-14.  But, citing to authority from the

Eastern District of New York, Peden argues that a labor union *can* be liable to a plaintiff union

*member* for a violation of the ADA if the plaintiff first establishes that: (1) the union breached its

duty of fair representation; and (2) the union's actions were motivated by a discriminatory

animus.  *Id.* at 13-14 (citing *Ayazi v. United Fed. of Teachers, Local 2*, 2011 WL 888053, at *10

(E.D.N.Y. Mar. 14, 2011).  Neither party provides any authority from this Circuit endorsing its

respective position.[4]  But even if the Court were to adopt Plaintiff's position and assume that the

*Ayazi* test cited by Plaintiff is appropriate here, Peden's claim fails because he cannot satisfy the

test's second element.  Like the plaintiff in *Ayazi*, Peden has not supported his claim with

evidence that the Union was motivated by discriminatory animus based on Peden's disability or

that Peden was treated differently from other Union members in similar circumstances.  *See*

*Ayazi*, 2011 WL 888053, at *24.

Peden attempts to offer two pieces of evidence in support of his assertion that the Union's

actions were motivated by discriminatory animus.  First, Peden points to several excerpts of his

deposition testimony.  Pl.'s Opp. Br. 17-18.  However, nothing in these excerpts offers any

particular statements, actions, or even suggestions by the Union that support an inference of

discriminatory animus or an inference that the Union treated Peden differently from other Union

members based on a disability.[5]  At most, Peden's testimony indicates that Union officials may

---

[4]      Peden does point out that no court within the Third Circuit has rejected the *Ayazi* test from the
Eastern District of New York outlined above.

[5]      For instance, Peden testified, "[W]hen I got sick, and I really was sick, people started running.
They were running because I became a liability and I felt it . . . . after that, I believe it became a personal
vendetta . . . . even with the union, even with Mr. Davis."  JA 58a.  Peden also testified, when asked what
the Union did *not* do for him, that the Union "did not represent [him]" during one of the "hardest times in
[his] life."  JA 63a.  When asked specifically what about the ADA the Union violated, Peden responded,
"What I am saying is that the Union worked with management and turned their back when they knew that
was one of the reasons.  I became a liability."  JA 63a.  Finally, Peden testified that: "I was considered to
be a druggy and a dummy, I worked out of class to try to keep my job so everybody thought I didn't know

have developed personal issues with him, or as Peden himself put it, a "personal vendetta" against him, *see* JA 68a, or that there may have been communication difficulties between Peden and Union officials.  But as the court in *Ayazi* pointed out, "simple allegations of hostility by a Union official are not sufficient to support a claim that the Union acted with discriminatory intent."  *Ayazi*, 2011 WL 888053, at *24.

Second, Peden points to the Civil Service Commission appeal forms.  He suggests that the Union's claim that Peden himself altered the Civil Service Appeal form, despite his debilitating diabetes symptoms, casts doubt on the Union's proffered reason for not appearing at the appeal hearing: specifically, that Peden did not make the Union aware of his hearing date. *See* Pl.'s Opp. Br. 18.  Peden seems to argue, in other words, that the altered forms demonstrate that the Union's explanation for its absence at the appeal hearing was pretext for discrimination.

While the presence of two versions of this form in the record is indeed perplexing, the Court finds that Peden's argument falls short of establishing pretext.  Nothing in the record sheds any further light on why two versions of form exist or who may be responsible for the difference. And aside from Peden's own assertions in a 2012 letter to the PHRC that the Union was aware of his hearing date, *see* JA 37a, there is no evidence of record – such as deposition testimony or sworn statements from Peden or other witnesses, or documentary evidence – supporting these assertions.  Peden offers no evidence that he ever affirmatively informed the Union of his hearing date, and offers no indication of how the Union might have known about the hearing date without notification from Peden himself.[6]  Plaintiff's own speculative and conclusory allegations and unsupported arguments that the Union is disingenuous are simply insufficient to

_____

nothing.  So when they did this to me they never knew I was going to respond back as bright and fight for myself because I was considered to be a person that didn't know anything."  JA 68a.

[6]      Davis testified that the Commission notifies the individual who filed the appeal, rather than the Union, of the hearing date, and it is the Union's expectation that when that individual is notified of the appeal, he or she will report back to the Union.  *See* JA 18a.

raise a genuine issue of material fact as to whether the Union acted with discriminatory animus based on Peden's disability.  Therefore, Peden has failed to satisfy the second element of the *Ayazi* test.

The Third Circuit has also endorsed the application of the traditional ADA analytical burden-shifting framework to claims brought against labor unions by union members.[7]  To make out a *prima facie* case of disability discrimination under this framework, a plaintiff must demonstrate that he: "(1) is disabled within the meaning of the ADA; (2) can perform the essential functions of [his] job with or without reasonable accommodations; and (3) suffered an adverse employment action as a result of discrimination based on [his] disability."  *Patterson v. AFSCME #2456*, 320 F. App'x 143, 146 (3d Cir. 2009).  In *Patterson*, the "adverse employment action" claimed by the plaintiff as the basis of her ADA discrimination claim was a failure of the union to pursue her grievances to arbitration.  *See id.* at 147; *see also Patterson v. AFSCME #2456*, 2008 WL 2073991, at *11 (M.D. Pa. May 14, 2008), *aff'd*, 320 F. App'x 143 (3d Cir. 2009).  The Third Circuit affirmed the District Court's grant of summary judgment, finding that the plaintiff had failed to show this adverse employment action was a result of discrimination based on the plaintiff's disabilities; therefore, the court held, the plaintiff had failed to satisfy the third prong of her *prima facie* case.  *Patterson*, 320 F. App'x at 147.

For the same reasons discussed above with respect to the *Ayazi* test, Peden has not shown that any of the Union's actions (or inactions) related to his termination were the result of disability discrimination by the Union.  Therefore, Peden cannot satisfy the third prong of his

---

[7]  The *Ayazi* court also cited to the traditional burden-shifting framework, but first applied the test cited above, requiring the plaintiff to show: (1) a breach of the duty of fair representation and (2) that the union's actions were motivated by discriminatory animus.  *See Ayazi*, 2011 WL 888053, at *10.

*prima facie* case.[8]  Ultimately, regardless of the framework applied, Peden's ADA

discrimination claim against the Union fails and the Union is entitled to summary judgment.

### B.  Additional claims

In his Complaint, Peden also alleges that the Union discriminated against him in violation

of Title VII.  Compl. (Doc. 3) at 3.  He does not specify the basis of the alleged discrimination

claim (*e.g.*, race, religion, national origin, gender, or color), and he does not mention

discrimination on any of these bases in his description of the facts of his case.  *See id.* at 5.

Peden also claims that the Union retaliated against him by giving his medical records to the City

and to his previous attorney without his consent, though again, he does not specify whether he is

alleging retaliation under Title VII or the ADA.  *Id.*  The Union has moved for summary

judgment on all of these claims.  *See generally* Def.'s Br.  Significantly, Peden does not appear

to oppose the Union's motion for summary judgment on these claims, as his opposition brief

focuses solely on his ADA discrimination claim.  Pl.'s Opp. Br. 1-2 ("The Court should deny the

---

[8]      Even assuming, *arguendo*, that Peden could make out a *prima facie* case of disability
discrimination, his claim could not survive summary judgment.  Once a plaintiff makes out a *prima facie*
case of discrimination, the burden of production shifts to the defendant to offer evidence of a legitimate,
nondiscriminatory reason for its action.  *Shaner v. Synthes*, 204 F.3d 494, 500-01 (3d Cir. 2000).  If the
defendant offers such a reason, the burden shifts back to the plaintiff to show that defendant's explanation
is merely a pretext for discrimination.  *See id.*  To establish pretext, the plaintiff must offer evidence
"from which a factfinder could reasonably either (1) disbelieve the [defendant's] articulated legitimate
reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or
determinative cause of the [defendant's] action."  *Burton v. Teleflex Inc.*, 707 F.3d 417, 427 (3d Cir.
2013) (quoting *Fuentes v. Perskie,* 32 F.3d 759, 764 (3d Cir. 1994)).
        Here, Peden argues that the Union failed to adequately explain to him his employment options
with the City, and failed to represent him at his appeal hearing in April 2010.  Pl.'s Opp. Br. 14-16.  The
Union contends that it did, in fact, explain to Peden his options, and that a Union official did not appear at
Peden's hearing because Peden never provided notice of the hearing date.  *See* Def.'s Br. 3; *see also* JA
3a.  While the parties obviously disagree as to who is to blame for any inaction by the Union, Peden has
not put forth any evidence that demonstrates "weaknesses, implausibilities, inconsistencies,
incoherencies, or contradictions" in the Union's explanations, or suggests that Peden's disability was even
a motivating factor behind the Unions actions or inactions.  *Burton*, 707 F.3d at 427.  At most, Peden has
offered evidence to suggest communication difficulties with the Union, or personal issues between Peden
and Union officials.  But he has not presented any evidence from which a reasonable juror could conclude
that the Union's reasons for its actions or inactions were a pretext for disability discrimination.

Union's Motion for Summary Judgment, because the evidence supports a prima facie case that the Union breached its duty of fair representation, and that the breach was motivated by animus arising from Peden's workplace disability. . . .")  The Court has nevertheless considered and will briefly address Peden's remaining claims.

### i.  Title VII discrimination

To establish a *prima facie* case of Title VII discrimination against a labor union, a plaintiff must show: "(1) the [union] committed a violation of the [collective bargaining agreement] with respect to the plaintiff; (2) . . . the Union permitted that breach to go unrepaired, thus breaching its own duty of fair representation; and (3) . . . there was some indication that the Union's actions were motivated by some discriminatory animus."  *Young v. Local 1201, Firemen & Oilers Union*, 2009 WL 3152119, at *4 (E.D. Pa. Sept. 25, 2009), *aff'd*, 419 F. App'x 235 (3d Cir. 2011) (citation and internal quotation marks omitted).  Here, again, Peden has failed to produce evidence that the Union's actions were motivated by discriminatory animus.  When asked at his deposition about any such discrimination, Peden specifically denied that the Union discriminated against him based on his race, color, gender, religion, or national origin.[9]  JA 68a; *see also* JA 67a ("Was it because I was a man, was it because I was a woman, was it because I was color, I don't believe that, but I do know that my Civil Rights was violated.").  There is simply no evidence of record indicating that Peden was treated differently from Union members of a different race, color, gender, religion, or national origin.  Accordingly, to the extent that Peden is pursuing a claim for discrimination under Title VII, which it appears he is not, the Union is entitled to summary judgment.

---

[9]     Peden, in fact, clarified the basis of his claims: he "was discriminated against because of [his] drug and alcohol" problem.  JA 68a.

### ii.  Title VII retaliation

Title VII also prohibits a labor union from retaliating against a member.  42 U.S.C.

§ 2000e-3(a).  To establish a *prima facie* case of retaliation, a plaintiff must demonstrate: (1) he

participated in a protected activity known to the Union; (2) he suffered an adverse employment

action; and (3) there is a causal connection between the protected activity and the adverse

employment action.  *Patterson*, 2008 WL 2073991, at *12.  "With respect to 'protected activity,'

the anti-retaliation provision of Title VII protects those who participate in certain Title VII

proceedings (the 'participation clause') and those who oppose discrimination made unlawful by

Title VII (the 'opposition clause')."  *Young*, 2009 WL 3152119, at *6 (quoting *Moore v. City of

Phila.*, 461 F.3d 331, 341 (3d Cir. 2006) (internal quotation marks omitted)).  Under the

opposition clause of Title VII, a plaintiff must "specifically complain" that he suffered unfair

treatment due to reasons that violate Title VII.  *Id.*  (citing *Barber v. CSX Distrib. Servs.*, 68 F.3d

694, 701 (3d Cir. 1995)).  "Similarly, under the participation clause, the formal complaint giving

rise to the Title VII proceeding must 'allege prohibited grounds.'" *Id.* (quoting *Slagle v. County

of Clarion*, 435 F.3d 262, 267 (3d Cir. 2006)).  Here, Peden does not provide the Court with the

slightest hint of his participation in an activity protected under Title VII, let alone offer any

evidence of such participation.  He has, therefore, failed to satisfy even the first element of a

*prima facie* case of Title VII retaliation.  So, to the extent Peden has pleaded and maintains such

a claim, summary judgment in favor of the Union is appropriate.

### iii.  ADA retaliation

"To establish a prima facie case of retaliation under the ADA, a plaintiff must show: (1)

protected employee activity; (2) adverse action by the employer either after or contemporaneous

with the employee's protected activity; and (3) a causal connection between the employee's

protected activity and the employer's adverse action." *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997). ADA retaliation claims are analyzed under the same framework as Title VII retaliation claims; "protected activities" are acts of opposition to "any act or practice made unlawful by [the ADA]" or "ma[king] a charge, testif[ying], assist[ing], or participat[ing] in any manner in an investigation, proceeding, or hearing" under the ADA. 42 U.S.C. § 12203(a). Peden never mentions his participation in an activity protected under the ADA – prior to or contemporaneous with any alleged adverse action – nor does the record contain any evidence of protected activity. Therefore, summary judgment is also appropriate as to a claim by Peden of retaliation under the ADA, if Peden has even alleged such a claim.

## IV.      CONCLUSION

Having carefully reviewed the evidentiary record and the briefing submitted by both parties, and drawing all inferences in favor of Peden as the non-moving party, the Court finds that there are no genuine issues of material fact in dispute on any of Peden's claims and grants Defendant's motion for summary judgment in its entirety.

An implementing Order follows.

11